UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANA MARIA RUBIO, | Case No.: 3:23-cv-00399-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 11, 15 |
| MARTIN O'MALLEY, Commissioner of Social Security Administration, | |
| Defendant | |

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 11.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 15, 16.) Plaintiff filed a reply brief. (ECF No. 17.)

After a thorough review, Plaintiff's motion to remand is granted; the Commissioner's cross-motion to affirm is denied; and this matter is remanded for further proceedings consistent with the findings in this Order.

**I. BACKGROUND**

In July 2020, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning on April 20, 2012. (Administrative Record (AR) 269-271.) The application was denied initially and on reconsideration. (AR 100-118.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 119-120.) ALJ Wynne O'Brien-Persons held a hearing on May 19, 2022. (AR 60-82.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was

also taken from a vocational expert (VE). On June 27, 2022, the ALJ issued a decision finding Plaintiff not disabled. (AR 27-45.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to sustain her burden at step five because Plaintiff lacks the language and educational levels to perform the occupations identified by the VE; and (2) substantial evidence does not support a finding that such jobs exist in significant numbers in the national economy.

The Commissioner, on the other hand, argues that substantial evidence supports the ALJ's step five determination that Plaintiff is capable of performing a significant number of other jobs available in the national economy.

## II. STANDARDS

**A. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairments are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is

engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the

1 reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740
2 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said,
3 "a decision supported by substantial evidence will still be set aside if the ALJ did not apply
4 proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th
5 Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will
6 "review only the reasons provided by the ALJ in the disability determination and may not affirm
7 the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v.
8 Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of April 20, 2012, through her date last insured of December 31, 2017. (AR 30.)

At step two, the ALJ concluded Plaintiff had the following severe impairment: left foot/ankle status post multiple surgeries. (AR 30.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 31.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except she is capable of standing/walking for two hours in an eight-hour workday; she can engage in occasional postural activity, except she can never climb ladders/ropes/scaffolds; she can have frequent exposure to temperature extremes and vibrations; and she can have occasional exposure to hazards. (AR 31-32.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 40.)

At step five, the ALJ determined that considering Plaintiff's age (49), education (marginal education), work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: document preparer (Dictionary of Occupational Titles (DOT) Number 249.587-018; 66,353 approximate jobs nationally); order clerk (DOT Number 209.567-014; 159,210 approximate jobs nationally); and surveillance-system monitor (DOT Number 379.367-010; 19,365 approximate jobs nationally). (AR 41-44.) As a result, the ALJ found Plaintiff not disabled from April 20, 2012, through her date last insured of December 31, 2017. (AR 45.)

**B. Language and Education**

**1. The Hearing**

Plaintiff testified that she completed up to sixth grade in Mexico, and she is able to read and write only in Spanish. (AR 71.) She was assisted by an interpreter at the hearing.

At step five, the ALJ posed a hypothetical to the VE of a person with Plaintiff's age, education and prior work experience, able to perform light work, but limited to walking and standing for two hours in an eight-hour workday, with no ladders/ropes/scaffolds, but occasional other postural, and the ability to be exposed frequently to temperature extremes and vibrations, but only occasional exposure to hazards. (AR 74.) The VE testified that individual could perform the document preparer, order clerk (food and beverage), and surveillance-systems monitor jobs. (AR 74.)

Plaintiff's counsel then asked the VE if the person could do the document preparer job if the person is not literate in English and only literate in Spanish. The VE testified that the person

could not perform that job, because the language level is two. (AR 76.) Plaintiff's counsel then asked about the order clerk position. The VE responded:

> Again, the DOT – first, let me say the DOT talks about language. But it doesn't specify any particular language. So, if you're saying they're not literate in English – but I would assume there may be some places where they only speak Spanish. So, I have a difficulty with that.

(AR 76-77.)

Plaintiff's counsel then asked if the VE could provide an erosion for the jobs that would exist for someone who is only Spanish speaking. The VE responded:

> I would say yes. There could be an erosion. But no – that certainly isn't in the DOT. What is in the DOT is language. When you look at language, it doesn't specify what kind of language. So, it could be any language.

(AR 77.) Plaintiff's counsel again asked what percentage of erosion there would be for positions that are Spanish speaking only? The VE replied that for the document preparer job, "they'd have to read something in writing. And the reasoning level would be too high." (AR 77.)

The ALJ then interjected, telling the VE to keep in mind that the hypothetical involved a person of Plaintiff's age, educational background, and work experience, and Plaintiff's educational level was of one who can read and write at a sixth grade level or completed sixth grade. (AR 77.) The VE then testified: "At language level 2, they could do that, per your hypothetical." (AR 78.)

The ALJ then posed the following question: "We're just talking – right now, we're just talking about an individual who has an educational level of sixth grade. Can they perform the document preparer, the order clerk and the surveillance-system monitor?" The VE responded affirmatively. (AR 78.)

1    The ALJ then asked if a person can only read at a language level two, can they do the jobs the VE identified, and the VE responded: "I think they could, at a level 2." (AR 78-79.)

    The ALJ then returned to Plaintiff's counsel's question of whether "there would be any erosion in those jobs, based on a Spanish speaker performing those jobs?" The VE replied: "[I]t would have to be in an area that accepts bilingual work, or it's in the Spanish area, and in – if there would be an erosion, I'd say at least 30 percent." (AR 79.)

    The VE went on to testify: "But for the – she couldn't do the document preparer, the order clerk, food service. And the surveillance-systems monitor—a higher level for language. So, I don't believe she could do that." (AR 79.) The ALJ clarified that the VE was testifying that this was the case if she was a Spanish speaker, and the VE confirmed this was the correct. (AR 79-80.)

    Finally, Plaintiff's counsel asked the VE whether if the individual was limited to jobs that are language level one, whether she could perform any of the identified jobs. The VE said, "No … no, not language level 1. I was looking at sedentary jobs. But language level 1 – mentally, I don't see any. I could look through the DOT, but I don't have any with a language level 1." (AR 80.)

**2. The ALJ's Decision**

    The ALJ noted that Plaintiff's counsel had objected to the jobs identified by the VE because Plaintiff's primary language was Spanish, and she has only a sixth-grade education from Mexico. Plaintiff's counsel argued this would remove the jobs identified by the VE due to the need for a higher level of language skills. The ALJ overruled the objection, indicating that education, as a vocational factor, is addressed in the Social Security Administration's (SSA) Program Operations Manual System (POMS) DI 25015.010, which provides that the ALJ is not

to consider whether the claimant attained his or her education in another country or whether the claimant lacks English language proficiency when determining the education category. As such, the ALJ just considered Plaintiff's marginal educational level. The ALJ also noted that a Federal Register (FR) Notice, 85 FR 10586, published February 25, 2020, provided finalized regulations, and as of the effective date of April 27, 2020, SSA no longer considers whether an individual is able to communicate in English at the fifth step of the sequential evaluation process. (AR 44.)

### 3. Analysis

Plaintiff argues that the document preparer and order clerk jobs required a language level of two under the DOT, and the surveillance-systems monitor job requires a language level of three, and there is nothing in the record that supports a finding that Plaintiff has the language ability to perform these jobs. She further argues that she lacks the requisite education to perform these jobs. She asserts that the Occupational Outlook Handbook (OOH), of which the Commissioner takes administrative notice, indicates that each of these jobs requires a higher level of education than that possessed by Plaintiff. Finally, Plaintiff contends the VE testified that the jobs identified (which are at language levels two and three) could not be performed if the individual was only a Spanish speaker, and the VE did not identify any language level one jobs that Plaintiff could perform.

The Commissioner argues that ALJs no longer consider whether a claimant can communicate in English at step five, and as such, this issue is not relevant to Plaintiff's potential occupational base. The Commissioner contends the record demonstrated that Plaintiff could perform the occupations identified at step five with her marginal education.

At step five, the ALJ must decide whether, considering the claimant's RFC, age, education and work experience, the claimant can perform other jobs that exist in significant

numbers in the national economy. The regulations identify categories of educational levels, including: illiteracy, marginal education, limited education, and high school education and above. 20 C.F.R. § 404.1564(b)(1)-(4). "Marginal education" is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." Formal schooling at a sixth grade level or less is generally considered a marginal education. 20 C.F.R. § 404.1564(b)(2).

In 2020, 20 C.F.R. § 404.1564(b) was amended to omit the requirement that the ALJ consider the claimant's ability to read and understand English when evaluating education. The amended regulation was effective April 27, 2020. *See* 85 FR 10586-01, 2020 WL 885690 (Feb. 25, 2020); *see also* Social Security Ruling (SSR) 20-01p, 2020 WL 1083309, n. 8 (Mar. 9, 2020). Plaintiff's claim was filed in July 2020; therefore, the amended regulation applies.

In finalizing the amended regulation, SSA explained that it was eliminating the education category –"inability to communicate in English"— because it "is no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since we adopted the current rule more than 40 years ago." 2020 WL 885690 at * 10586.

The document preparer and order clerk positions are assigned a language level of two by the DOT, which is defined as encompassing the following: "Passive vocabulary of 5,000-6,0000 words. Read at a rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes[;]" "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs[;]" and "[s]peak clearly and distinctly with appropriate pauses and emphasis, correct punctation,

1  variations in word order, using present, perfect, and future tenses." (DOT 249.587-018, 1991 WL
2  672349 (4th ed. Rev. 1991); DOT 209.567-014, 1991 WL 671794 (4th ed. Rev. 1991).

3  Language level two does not provide that *English* language skills are required.
4  Nevertheless, while the regulation was amended to omit the requirement that the ALJ consider a
5  claimant's English proficiency, here, the ALJ specifically asked the VE about an erosion of these
6  jobs if the claimant only spoke Spanish. Not only did the VE testify that there would be at least a
7  30 percent erosion of the jobs, but the VE specifically testified that Plaintiff could <u>not</u> perform
8  the document preparer or order clerk positions. (AR 79.)

9  The surveillance-system monitor job has a language level of three, which encompasses
10 the ability to: "Read a variety of novels, magazines, atlases, and encyclopedias. Read safety
11 rules, instructions in the use and maintenance of shop tools and equipment, and methods and
12 procedures in mechanical drawing and layout work[;]" "[w]rite reports and essays with proper
13 format, punctuation, spelling, and grammar, using all parts of speech[;]" and "[s]peak before an
14 audience with poise, voice control, and confidence, using correct *English* and a well-modulated
15 voice." (DOT 379.367-010, 1991 WL 673244 (4th ed. Rev. 1991).)

16 Language level three does indicate that *English* language skills are required. Thus, there
17 is a conflict between the DOT and the finding that Plaintiff could perform this job. Moreover, the
18 VE specifically testified that she did <u>not</u> think Plaintiff could perform the surveillance-systems
19 monitor job because it required a higher level for language. (AR 79.)

20 In sum, this case is distinguishable from those cited by the Commissioner because while
21 an ALJ is no longer required to address English proficiency limitations with the VE at step five,
22 in this case the ALJ *did* ask the VE to consider whether a claimant who only speaks Spanish
23 could perform the identified jobs, and the VE indicated that she could not. While there may be

12

more jobs available now for people with limited English proficiency, the ALJ must still identify specific jobs at step five that the particular claimant can perform. *See Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523-SKV, 2022 WL 1963719, at *4 (W.D. Wash. June 6, 2022) (noting the agency did "not dispute that language proficiency *may* affect job placement, but that because the data shows that more jobs are now available for people with limited English proficiency, the agency finds that English proficiency *is no longer as influential a category as it once was.*").

Therefore, the court finds the ALJ erred in concluding Plaintiff could perform the jobs of document preparer, order clerk, and surveillance-systems monitor at step five. The court finds the appropriate course is to remand this matter for further proceedings to determine if there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. There may be jobs that Plaintiff can perform that are language level one. The VE testified: "*I could look through the DOT*, but I don't have any with a language level 1," indicating that such jobs *may* exist, but the VE did not identify any during the hearing. It is also possible that other language level two jobs exist that Plaintiff could perform. *See e.g. Vang v. Commissioner of Social Security*, No. 1:21-cv-00488-SAB, 2022 WL 17812859, at *8 (E.D. Cal. Dec. 19, 2022), (VE testified that the positions she identified (language levels one and two) were jobs that could also be learned through visual demonstration rather than by written or spoken instruction).

In light of the court's conclusion, it need not reach Plaintiff's argument regarding whether the jobs identified by the VE exist in significant numbers in the national economy.

///

///

///

///

13

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 11) is **GRANTED;**

The Commissioner's cross-motion (ECF No. 15) is **DENIED;**

This matter is **REMANDED** for further proceedings consistent with this Order.

The Clerk shall enter JUDGMENT accordingly.

**IT IS HEREBY ORDERED.**

Dated: May 23, 2024

_____
Craig S. Denney
United States Magistrate Judge